## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TIGER SUPPLIES INC., | Case No. 20-CV-1864 (CCC)(ESK) |
| Plaintiff, | *Document Filed Electronically* |
| -vs- | |
| ALLPAC WORLDWIDE, INC., | |
| Defendant. | |

---

**BRIEF OF PLAINTIFF, TIGER SUPPLIES, INC.  IN OPPOSITION TO DEFENDANT, ALLPAC WORLDWIDE, INC.'S MOTION TO DISMISS THE COMPLAINT**

---

LUM DRASCO & POSITAN LLC

Arthur M. Owens
Dennis J. Drasco
LUM, DRASCO & POSITAN LLC
103 Eisenhower Parkway, Suite 401
Roseland, NJ 07068
Tel: 973-403-9000
Fax: 973-403-9021
aowens@lumlaw.com
ddrasco@lumlaw.com

Dated: June 1, 2020                    *Attorney for Tiger Supplies, Inc.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ............................................................................... 2

LEGAL ARGUMENT ..................................................................................... 5

POINT I .......................................................................................................... 5

**ALLPAC HAD SUFFICIENT MINIMUM CONTACTS WITH THE STATE OF
NEW JERSEY TO SATISFY DUE PROCESS AND CONFER SPECIFIC
PERSONAL JURISDICTION** ..................................................................... 5

POINT II ....................................................................................................... 10

**VENUE IS PROPER IN THE DISTRICT OF NEW JERSEY** ................. 10

POINT III ..................................................................................................... 12

**THERE IS NO PERTINENT CONFLICT OF LAW BETWEEN NEW JERSEY
AND FLORIDA LAW FOR ANY OF THE CLAIMS ASSERTED IN THE
COMPLAINT** ............................................................................................ 12

A.     There is No Conflict of Law Between New Jersey and Florida Law Regarding the
       Elements for a Tortious Interference with Contract Claim ................................ 13

B.     There is No Conflict of Law Between New Jersey and Florida Law Regarding the
       Elements for a Tortious Interference with Business Expectancy Claim ............ 14

POINT IV ..................................................................................................... 16

**ALLPAC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM MUST
BE DENIED AS ALL CAUSES OF ACTION WERE SUFFICIENTLY
PLED** ....................................................................................................... 16

A.     Tiger Supplies has Sufficiently Pled a Breach of Contract Claim Against AllPac ......... 16

B.     Tiger Supplies has Sufficiently Pled a Cause of Action for Fraudulent
       Inducement/Misrepresentation against AllPac ................................................. 21

C.     Tiger Supplies has Sufficiently Pled a Cause of Action under the New Jersey
       Consumer Fraud Act Claim .............................................................................. 24

D.     Tiger Supplies has Sufficiently Pled a Cause of Action for Tortious Interference
       with Contract ................................................................................................... 24

E.   Tiger Supplies has Sufficiently Pled a Cause of Action for Tortious Interference with Business Expectancy ............................................................................... 26

F.   Tiger Supplies has Sufficiently Pled a Cause of Action for Unjust Enrichment .............. 28

G.   Tiger Supplies has Sufficiently Pled a Conversion Claim ................................................ 30

## TABLE OF AUTHORITIES

### Cases

*ACP GP, LLP v. United Home Care, Inc.*,
   2018 WL 4693969 at *5 (D.N.J. Oct. 1, 2018).......................................................... 11

*Adami v. Cardo Windows, Inc.*,
   2014 WL 2586933 at *15 (D.N.J. June 10, 2014) ................................................... 31

*Aetna Sur. And Cas. Co. v. Sacchetti*,
   956 F. Supp. 1163, 1168 (D.N.J. 1996) ................................................................. 12

*Alexander v. CIGNA Corp.*,
   991 F. Supp. 425, 427 (D.N.J. 1998) ...................................................................... 23

*American Tel. & Tel. Co. v. MCI Communications Corp.*,
   736 F. Supp. 1294, 1304 (D.N.J. 1990) ................................................................... 7

*Apollo Technologies Corp. v. Centrosphere Industrial Corp.*,
   805 F. Supp. 1157, 1181 (D.N.J. 1992) ................................................................... 6

*Ashcroft v. Iqbal*,
   556 U.S. 662, 678 (2009)........................................................................................ 16

*Atlantic Northern Airlines v. Schwimmer*, 1
   2 N.J. 293, 301 (1953) .................................................................................... 19, 20

*Avdel Corp. v. Mecure*,
   58 N.J. 264, 268 (N.J.1971) ................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 555 (2007)........................................................................................ 30

*Capitalplus Equity, LLC v. Prismatic Dev. Corp.*,
   2008 WL 2783339 at *6 (D.N.J. July 16, 2008)..................................................... 22

*Charles Gendler & Co. v. Telecom Equip. Corp.*,
   102 N.J. 460, 469 (1986) ........................................................................................ 6

*Chen v. HD Dimension Corp.*,
   2010 WL 4721514 at *8 (D.N.J. Nov. 15, 2010)..................................................... 22

*Conway v. 287 Corporate Center Associates*,
   187 N.J. 259, 269-270 (2006) ......................................................................... 19, 20

*Cottman Transmission Sys, Inc. v. Martino*,
   36 F.3d 291, 294 (3d Cir. 1994).............................................................................. 11

*Cybersell, Inc. v. Cybersell, Inc.*,
   130 F. 3d 414 (9th Cir. 1997) .................................................................................. 9

*Davis v. Froelich*,
   2020 WL 529143 at *1 (D.N.J. Jan. 30, 2020) ....................................................... 30

*Dean v. Barrett Homes, Inc.*,
   406 N.J. Super. 453, 470 (App Div. 2009) .............................................................. 22

*DeFazio v. Wells Fargo Bank National Association*,
   2020 WL 1888252 at *7 (D.N.J. April 16, 2020) ..................................................... 8

*DiGiorgio Corp. v. Mendez & Co.*,
   230 F. Supp. 2d 552, 558 (D.N.J. 2002), ............................................................... 25

*Electro-Catheter Corp. v. Surgical Specialties Instrument Corp.*,
   587 F. Supp. 1446, 1455 (D.N.J. 1984) ................................................................... 7

*Fidelity Eatontown, LLC v. Excellency Enterprise, LLC,*
   2017 WL 2691417 at *6-7 (D.N.J. June 22, 2017) .................................................. 26
*Fimbel v. Fimbel Door Corp.,*
   2014 WL 6692004 at *5 (D.N.J. Dec. 10, 2014) .................................................... 24
*Fireman v. Armstrong World Industries, Inc.,*
   980 F.2d 171, 186 (3d Cir. 1992) ........................................................................... 15
*G&F Graphic Servcs., Inc. v. Graphic Innovators, Inc.,*
   18 F. Supp. 3d 586, 593 (D.N.J. 2014) .................................................................. 22
*Globe Motor Co. v. Igdalev,*
   225 N.J. 469, 482 (2016) ....................................................................................... 17
*Grande Village LLC v. CIBC Inc.,*
   2015 WL 1004236 at *8 (D.N.J. March 6, 2015) ................................................... 26
*Hanson v. Denckla,*
   357 U.S. 235, 253 (1958) .......................................................................................... 7
*Howmedica Osteonics Corp. v. Zimmer, Inc.,*
   2012 WL 555453 at *11 (D.N.J. Nov. 14, 2012) .................................................... 14
*IMO Industries, Inc. v. Kiekert AG,*
   155 F.3d 254, 259 (3d Cir. 1998) ............................................................................. 9
*Ketcham v. Charles R. Lister Int'l, Inc.,*
   167 N.J. Super, 5, 7 (App. Div. 1978) ...................................................................... 6
*Khorchid v. 7-Eleven, Inc.,*
   2018 WL 5149643 (D.N.J. Oct. 22, 2018) .............................................................. 18
*Klaxon v. Stentor Elec. Mfg. Co.,*
   313 U.S. 487, 496 (1941) ........................................................................................ 12
*Knierim v. Siemens Corp.,*
   2008 WL 906244 at *16 (D.N.J. March 31, 2008) ................................................. 15
*Lebel v. Everglades Marina, Inc.*
   115 N.J. 317, 325 (1984) .......................................................................................... 7
*Maniscalco v. Brother Intern. (USA) Corp.,*
   709 F. 3d 202, 206 (3d Cir. 2013) .......................................................................... 13
*Mastondrea v. Occidental Hotels Management S.A.,*
   391 N.J. Super. 261, 269 (App. Div. 2007) .............................................................. 6
*North Penn Gas Co. v. Corning Natural Gas Corp.,*
   897 F. 2d 687, 689 (3d Cir. 1990) ............................................................................ 6
*P.V. v. Camp Jaycee,*
   197 N.J. 132, 136 (2009) ........................................................................................ 13
*Park Inn Intern., L.L.C. v. Mody Enterprises,*
   105 F. Supp. 2d 370, 376 (D.N.J. 2000) ................................................................ 11
*Pauly v. Houlihan's Restaurants, Inc.,*
   2012 WL 6652754 at *7 (D.N.J. Dec. 12, 2012) .................................................... 29
*Phillips v. County of Allegheny,*
   515 F. 3d 224, 234 (3d Cir. 2008) .......................................................................... 17
*Printing Mart-Morristown v. Sharp Elec. Corp.,*
   116 N.J. 739, 751-752 (1989) .......................................................................... 25, 27
*Ramon v. Budget Rent-A-Car Sys.,*
   2007 WL 604795 at *5 (D.N.J. Feb. 20, 2007) ...................................................... 29

*Ricketti v. Barry*,
   2015 WL 1013547 at *8 (D.N.J. Mar. 9, 2015) ............................................. 30
*Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield of Pennsylvania, Inc.*,
   49 F. Supp. 2d 728, 733-734 (D.N.J. 1999) ............................................. 14
*Syncsort v. Innovative Routines, Intern, Inc.*,
   2005 WL 1076043 at *13 (D.N.J. May 6, 2005 ............................................. 26
*Thabault v. Chait*,
   541 F. 3d 512, 555 (3d Cir. 2008) ............................................. 12
*Toys "R" Us, Inc. v. Step Two, S.A.*,
   318 F.3d 446, 452 (3d Cir. 2003) ............................................. 9
*Travelers Indem. Co. v. Dammann & Co., Inc.*,
   594 F. 2d 238, 244 (3d Cir. 2010) ............................................. 22
*U.S. v. Clementon Sewerage Authority*,
   365 F. 2d 609, 613 (3d Cir. 1966) ............................................. 18, 19
*Walden v. Fiore*,
   571 U.S. 277, 284 (2014) ............................................. 7
*Wanaque Borough Sewerage Auth. v. West Milsford*,
   144 N.J. 564, 575 (1996) ............................................. 29
*Werner Aero Services, LLC v. Professional Technology Repairs*,
   2017 WL 3610485 at *2 (D.N.J. April 28, 2017) ............................................. 17

## **Statutes**

Federal Rule of Civil Procedure 12(b)(2) ............................................. 1
Federal Rule of Civil Procedure 12(b)(3) ............................................. 1
Federal Rule of Civil Procedure 12(b)(6) ............................................. 1
28 U.S.C. §1391(b)(2) ............................................. 10, 12
Federal Rule of Civil Procedure 8(a)(2) ............................................. 16, 30
New Jersey Consumer Fraud Act, N.J. Stat. Ann. §56:8-1, *et seq.* ............................................. 24

## PRELIMINARY STATEMENT

Plaintiff, Tiger Supplies, Inc. ("Tiger Supplies"), submits this brief in opposition to Defendant, AllPac Worldwide, Inc.'s ("AllPac") Motion to Dismiss Plaintiff's Complaint ("Motion"),  pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction; 12(b)(3) for improper venue; and 12(b)(6) for failure to state a claim.  The Motion to Dismiss should be denied because personal jurisdiction exists over AllPac in New Jersey, venue is proper in the District of New Jersey and Tiger Supplies has pled detailed causes of action in the Complaint.

Defendant, AllPac, owes Plaintiff, Tiger Supplies, in excess of $75,000 for goods it failed to deliver, in breach of its contract with Tiger Supplies.  Tiger Supplies made timely demand upon AllPac for payment of the amount of the undelivered goods, yet AllPac has failed and refused to refund Tiger Supplies the amount paid for goods which were never delivered and has filed the present Motion to Dismiss the Complaint instead.  In the Complaint ("Complaint") , Tiger Supplies asserted a cause of action for: Breach of Contract (Count I); Fraudulent Inducement/Misrepresentation (Count II); Breach of the New Jersey Consumer Fraud Act and Analogous State Unfair and Deceptive Acts (Count III); Tortious Interference with Business Expectancy (Count IV); Unjust Enrichment (Count V) and Conversion (Count VI).

As set forth herein, it is proper for this Court to exercise specific jurisdiction over AllPac, as that entity made false representations directed to and reached an agreement with a New Jersey corporation, which called for goods to be shipped to New Jersey, and then, after accepting payment, AllPac failed to perform under that agreement.   Further, AllPac's efforts to dismiss the Complaint for failure to state a claim must be denied as it repeatedly misstates the actual allegations contained in the Complaint and is unsupported by legal authority.  As set forth in greater detail below, AllPac's Motion to Dismiss must be denied in its entirety.

### STATEMENT OF FACTS

Tiger Supplies is a domestic partner corporation organized and existing under the laws of New Jersey, with its principal place of business at 27 Selvage Street, Irvington, New Jersey 07111.  Compl. at ¶2.  Tiger Supplies is a wholesale retailer and distributor in the business of delivering supplies and document storage solutions to clients nationwide across a litany of industries, including the medical, art, engineering, construction, and architectural industries.  *Id.* at ¶3.  Among other well-known products, Tiger Supplies sells respiratory masks to its clients.  *Id.*

Defendant is a Florida corporation with a principal place of business at 243 Lane Avenue North, Jacksonville, FL 32254.  Compl. at ¶4.  Defendant is in the business of selling goods, including but not limited to respiratory masks.  *Id.* at 5.

On January 27, 2020, Plaintiff's senior buyer, Stephanie Brown ("Ms.

2

Brown"), negotiated both telephonically and online with Mr. Muran regarding a potential bulk order purchase  of certain Sperian N95 Class ONE-Fit Respiratory Masks ("N95 Masks") which were for sale.  Compl. at ¶11.  During the course of negotiations, Mr. Muran informed Ms. Brown, via telephone and in an e-mail, that Defendant was in the possession of the goods sought by Tiger Supplies.  *Id*. at ¶12, Ex. C to Complaint.   In response, Ms. Brown stressed that Tiger Supplies needed to receive the goods as soon as possible following the execution of a purchase, as it sought to distribute the N95 Masks to its own clients thereafter.  *Id.* at ¶13. At all relevant times, AllPac knew that Tiger Supplies intended to sell the N95 Masks to various buyers who had requested expedited shipment of the products and even acknowledged the need to deliver the goods in a timely fashion.  *Id.*  at ¶14.

That same day, Tiger Supplies and AllPac executed a purchase order (interchangeably referred to as "the Contract") for 10,400 boxes of N95 Masks at a unit price of $4.75 per box, for delivery to Plaintiff's New Jersey warehouse.  Compl. at ¶¶15-16, Ex. D to Complaint.   The Contract expressly stated that "[o]nce payment is received, goods will be prepared and set for delivery."  *Id.* at ¶16, Ex. D. to Complaint.  Additionally, the Contract provided for a date of expiry a mere two days after its execution, by January 29, 2020.  *Id.*   Per the terms of the Contract, Tiger Supplies paid AllPac $49,4000 for the shipment and deliver of the N95 Masks on January 27, 2020.  *Id.*   In a phone call between Mr. Brown and Mr. Muran that day,

AllPac confirmed that the goods would be prepared for and shipped to Tiger Supplies by no later than that day.  *Id.* at ¶17.   However, the goods were never shipped.

In the days that followed, Tiger Supplies phoned and texted AllPac numerous times to confirm shipment of the goods by no later than January 30, 2020.  Compl. at ¶¶19-28.   Each time, AllPac confirmed that the goods would be shipped soon, and that Tiger Supplies would receive the goods by no later than January 31, 2020. *Id.*   In fact, on January 29, 2020, AllPac informed Tiger Supplies that a delivery truck was picking up goods from its facility for immediate shipment to Tiger Supplies' warehouse.  *Id.* at ¶¶23-26.

On January 30, 2020, to Tiger Supplies' dismay, AllPac informed Tiger Supplies for the first time, via text message, that it would be unable to deliver the order, as it did not possess the goods which were intended for delivery to Tiger Supplies.  Compl. at ¶29, Ex. F and Ex. G to the Complaint.   Based on these communications, Tiger Supplies came to learn that AllPac (1) did not possess the goods at the date and time of purchase on January 27, 2020; and (2) despite Mr. Muran's numerous phone calls and text messages to Ms. Brown confirming shipment details on the day of and in the days following the execution of the purchase order, AllPac never possessed or intended to deliver the goods owed to Tiger Supplies.  *Id.* at ¶30.

4

In the days and weeks that followed, Tiger Supplies exchanged text messages with AllPac, demanding a refund for its purchase, as well as compensation for the wire fees it incurred, with respect to sales to its own clients.  Compl. at ¶33.  Despite Tiger Supplies' timely demands, AllPac never delivered the ordered goods to Tiger Supplies, nor did it ever refund Tiger Supplies' order.  *Id.*  at ¶¶34-35.  As a result, Tiger Supplies been forced to credit its client for the full amount of the goods that they did not receive, as well as refund its clients' credit card and wire transfer fees, causing Tiger Supplies to lose significant sums arising from its failure to deliver goods, in addition to significant reductions in business from its clients.  *Id*. at ¶36.

## LEGAL ARGUMENT

### POINT I

### ALLPAC HAD SUFFICIENT MINIMUM CONTACTS WITH THE STATE OF NEW JERSEY TO SATISFY DUE PROCESS AND CONFER SPECIFIC PERSONAL JURISDICTION

AllPac argues that the Court lacks jurisdiction over AllPac.  *See* Motion, at 7-10.  However, AllPac's intentional conduct within the State of New Jersey created more than sufficient minimum contacts to satisfy due process requirements and to subject AllPac to jurisdiction in New Jersey.  Tiger Supplies does not possess sufficient information to suggest whether AllPac is subject to general jurisdiction in New Jersey.[1]  Given that Tiger Supplies' cause of action arises directly out of

---

[1] Nevertheless, it is telling that AllPac furnished no evidence, either by way of affidavit or otherwise, averring that it does not have any other business in the state of New Jersey.

AllPac's failure to deliver goods to New Jersey, specific jurisdiction may be asserted.

Under Federal Rule of Civil Procedure 4(h), a federal court has personal jurisdiction over a non-resident defendant to the extent authorized by the law of the state in which the court sits. *North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F. 2d 687, 689 (3d Cir. 1990). In turn, New Jersey Court Rule 4:4-4 enables the exercise of personal jurisdiction as far as is constitutionally permissible under the Due Process Clause of the Fourteenth Amendment. *Apollo Technologies Corp. v. Centrosphere Industrial Corp.*, 805 F. Supp. 1157, 1181 (D.N.J. 1992); *Charles Gendler & Co. v. Telecom Equip. Corp.*, 102 N.J. 460, 469 (1986).

In reviewing the evidence supporting a plaintiff's claim, the Court construes the State's long-arm jurisdictional provision, R. 4:4-4, as extending personal jurisdiction to the outermost limits afforded by due process under the United States Constitution. *Mastondrea v. Occidental Hotels Management S.A.*, 391 N.J. Super. 261, 269 (App. Div. 2007), citing *Avdel Corp. v. Mecure*, 58 N.J. 264, 268 (1971). As a result, jurisdiction has been exercised whenever possible with a liberal view, so long as the facts reasonably support the presence of the flexible concepts of "fair play and substantial justice." *Ketcham v. Charles R. Lister Int'l, Inc.*, 167 N.J. Super, 5, 7 (App. Div. 1978).

The minimum contacts standard was sufficiently refined by the Supreme Court in *Hanson v. Denckla*, where the Court required that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State …" 357 U.S. 235, 253 (1958).   In that regard, New Jersey courts have found sufficient minimum contacts where non-resident defendants knowingly (1) communicated with buyers located in New Jersey regarding the terms of a contract; and (2) received payment from those same plaintiffs.   *See Lebel v. Everglades Marina, Inc.* 115 N.J. 317, 325 (1984) (non-resident boat seller's actions of telephoning plaintiff buyer to iron out details of contract; act of mailing contract to buyer for sale; knowledge that buyer was based in New Jersey; and ultimate acceptance of payment from buyer, established sufficient minimum contacts with New Jersey for plaintiff to pursue fraud claims against seller); and *American Tel. & Tel. Co. v. MCI Communications Corp.*, 736 F. Supp. 1294, 1304 (D.N.J. 1990), *citing to Electro-Catheter Corp. v. Surgical Specialties Instrument Corp.*, 587 F. Supp. 1446, 1455 (D.N.J. 1984) (technology firm's telephone contacts with forum state of New Jersey constituted sufficient minimum contacts with forum state to establish specific jurisdiction).

AllPac cites to *Walden v. Fiore*, 571 U.S. 277, 284 (2014) for the principle that a non-resident defendant must itself create a substantial connection with the forum, for a court to exercise specific personal jurisdiction.   *See* Motion, at 9.   In

7

fact, AllPac did just that.  Here, the contract was negotiated by Tiger Supplies with AllPac, who knowingly and repeatedly interacted with Tiger Supplies via online messaging, texting, and telephone calls, and who ultimately accepted payment for an order of N95 Masks which it knew were to be shipped to New Jersey.  As such, there can be no plausible dispute that AllPac purposefully availed itself of conducting business activity within New Jersey, with respect to this transaction.

Further, all the cases cited in support of AllPac's argument are factually inapposite or otherwise inapplicable.  First, AllPac cites to *DeFazio v. Wells Fargo Bank National Association*, 2020 WL 1888252 at *7 (D.N.J. April 16, 2020) for the proposition that a non-resident defendant's virtual activities (website activities, phone calls, faxes, and e-mails) are insufficient to establish minimum jurisdiction. *See* Motion, at 9.   In *DeFazio*, the non-resident defendant represented the plaintiff in connection with a real estate closing in South Carolina (and not in New Jersey), and there was no evidence that any aspect of the transaction at issue occurred in New Jersey.  *Id.*  By contrast, AllPac contracted with Tiger Supplies to deliver goods to Tiger Supplies' warehouse **in New Jersey**, the forum in which Tiger Supplies ultimately commenced this lawsuit.   Unlike in *DeFazio*, where the non-resident defendant had minimal interaction with the forum state, AllPac's engagement with New Jersey was much more substantial.

8

AllPac also cites to *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) and *Toys "R" Us, Inc. v. Step Two*, *S.A.*, 318 F.3d 446, 452 (3d Cir. 2003) for the principle that "the use of a website accessible to a resident of New Jersey" does not create jurisdiction. *See* Motion, at 10. However the specific portion of the *IMO Industries Inc.* decision cited by AllPac does not support its argument, as the issue of websites for purposes of personal jurisdiction is not addressed therein.[2] Further, in *IMO Industries, Inc.*, the Court found insufficient evidence to establish that the non-resident defendant's alleged intentional tort was directed at the plaintiff (by way of a series of letters, phone calls, and meetings) or that the non-resident defendant's intentional tort had sufficient impact upon plaintiff in the forum to establish specific jurisdiction. *Id.* at 259-260, 266-267.

AllPac's reliance on *Toys "R" Us* opinion is similarly misplaced. In *Toys "R" Us*, the Court held that in order to show purposeful availment with a forum state via the non-resident defendant's website, the plaintiff must allege that the defendant directed its activity towards the forum state through its website. *Toys "R" Us, Inc.*, 318 F.3d at 452. Here, AllPac attempts to narrow the scope of its interactions with Tiger Supplies to a simple internet transaction. However, Tiger Supplies has not alleged that AllPac's website specifically targeted consumers in New Jersey or that

---

[2] *IMO Industries Inc.* does address a discussion by the Ninth Circuit in *Cybersell, Inc. v. Cybersell, Inc.*, 130 F. 3d 414, 420 (9th Cir. 1997), regarding whether a Florida defendant's website was aimed intentionally at Arizona, knowing that harm would be caused there. *Id.* at 264. AllPac's discussion of the opinion severely narrows and misconstrues the Court's discussion of *Cybersell*.

its website alone was sufficient to establish specific jurisdiction in New Jersey. Instead, as pled in the Complaint, AllPac availed itself of conducting business in New Jersey by extensively communicating with Tiger Supplies both prior to and following the execution of the Contract and by accepting payment for delivery of goods from a New Jersey buyer, where it knew that Tiger Supplies required delivery of the goods in New Jersey.

In the alternative, if the Court is inclined to grant AllPac's Motion with respect to the issue of jurisdiction, Tiger Supplies seeks leave to issue jurisdictional discovery prior to the entry of a final dismissal/transfer order.

## POINT II

### VENUE IS PROPER IN THE DISTRICT OF NEW JERSEY

AllPac further contends that venue in the District of New Jersey is improper pursuant to 28 U.S.C. §1391(b)(2), since (1) it neither resides nor is subject to personal jurisdiction in New Jersey; (2) the action could have been brought in the Middle District of Florida; and (3) a substantial portion of events or omissions related to the transaction at issue did not occur in New Jersey.[3] *See* Motion, at 11-12.   Contrary to AllPac's argument, venue is entirely proper in the District of New

---

[3] It is worth noting that, in its argument, AllPac erroneously references §1391(a) instead of §1391(b)(2) throughout its Motion.

Jersey as AllPac is subject to personal jurisdiction in New Jersey and as a substantial portion of events related to the Contract occurred in New Jersey.

Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2).  The statute does not require that a majority of the events occurred in the judicial district, or even that the challenged forum be the best forum for the lawsuit to be venued. *Park Inn Intern.*, *L.L.C. v. Mody Enterprises*, 105 F. Supp. 2d 370, 376 (D.N.J. 2000), citing to *Cottman Transmission Sys, Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994).

Courts have upheld the venue in New Jersey, where the plaintiff pursuing a breach of contract claim was a New Jersey corporation and where the contract at issue was directed at that same corporation. *See ACP GP, LLP v. United Home Care, Inc.*, 2018 WL 4693969 at *5 (D.N.J. Oct. 1, 2018) ("where a party purposely avails himself of the laws of New Jersey by entering an agreement with a New Jersey company whose effects would be felt in New Jersey, a court located in New Jersey may properly exercise personal jurisdiction over him").

As established above, AllPac is subject to personal jurisdiction because of its sufficient minimum contacts with New Jersey.   Contrary to AllPac's assertions, a substantial portion of events and omissions related to the transaction at issue occurred in New Jersey, as Tiger Supplies is a New Jersey corporation that

11

anticipated receipt of goods, pursuant to contract, at its warehouse in New Jersey. While AllPac can argue that Florida may be an appropriate venue, it cannot argue that New Jersey is an improper venue under §1391(b)(2).  For these reasons, venue is entirely appropriate in the District of New Jersey under 28 U.S.C. §1391(b)(2).

## POINT III

### THERE IS NO PERTINENT CONFLICT OF LAW BETWEEN NEW JERSEY AND FLORIDA LAW FOR ANY OF THE CLAIMS ASSERTED IN THE COMPLAINT

AllPac argues that Florida's substantive law applies where there is a conflict between New Jersey and Florida law and further contends that Florida law applies to Tiger Supplies' claims for tortious interference with contract (Count V); and tortious interference with business expectancy (Count VI).[4]  *See* Motion, at 13-20. Because no conflict of law exists with respect to either claim, New Jersey law applies.

As a federal court sitting in diversity jurisdiction, this court must apply the law of the state in which it sits, including the choice of law rules of the forum state. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), *Aetna Sur. And Cas. Co. v. Sacchetti*, 956 F. Supp. 1163, 1168 (D.N.J. 1996), *Thabault v. Chait*, 541 F. 3d 512, 555 (3d Cir. 2008).

---

[4] In its Motion, AllPac concedes that New Jersey law is applicable for the remaining claims in the Complaint.  For that reason, Tiger Supplies has not addressed AllPac's discussion regarding those claims.

New Jersey has adopted the "most significant relationship" two-part test set forth in the Restatement (Second) of Conflict Laws. *P.V. v. Camp Jaycee*, 197 N.J. 132, 136 (2009). The first part of the choice-of-law inquiry is to determine whether an actual conflict exists between the laws of the potential forums. *Maniscalco v. Brother Intern. (USA) Corp.*, 709 F. 3d 202, 206 (3d Cir. 2013). Under the second part of the inquiry, the court must determine which jurisdiction has the "most significant relationship" to the claim. *Id.* at 207.

### A.    There is No Conflict of Law Between New Jersey and Florida Law Regarding the Elements for a Tortious Interference with Contract Claim

AllPac erroneously contends that a conflict exists between the laws of New Jersey and Florida, with respect to Tiger Supplies' claim for tortious interference with contract (Count IV). *See* Motion, at 16-18. Specifically, AllPac alleges that a conflict of law exists because Florida law contains a requirement that the defendant had knowledge of the contract at issue, whereas New Jersey law does not. *See* Motion, at 16. In so doing, AllPac misconstrues the elements of a claim for tortious interference with contract under New Jersey Law.

In fact, New Jersey law requires that claims for tortious interference include an allegation that the defendant's interference was intentional and with malice, which presumes an element of knowledge. Accordingly, there is no conflict between the laws of New Jersey and Florida, with respect to such a claim. *See Howmedica*

13

*Osteonics Corp. v. Zimmer, Inc.*, 2012 WL 555453 at *11 (D.N.J. Nov. 14, 2012)(finding no conflict of law for a tortious interference of contract claim between New Jersey law and Arizona law, where there was a similar knowledge requirement for the defendant under Arizona law); *see also Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield of Pennsylvania, Inc.*, 49 F. Supp. 2d 728, 733-734 (D.N.J. 1999) (finding that a conflict of law existed between New Jersey law and Dutch law for a tortious interference with contract claim, where the Netherlands did not require a showing of intent to state such a claim).

As there is no conflict between New Jersey and Florida law with respect to the elements required to state a claim for intentional interference with contract, New Jersey law applies and a discussion as to which state had the most significant relationship to the claims asserted is unnecessary.

### B.    There is No Conflict of Law Between New Jersey and Florida Law Regarding the Elements for a Tortious Interference with Business Expectancy Claim

AllPac further argues that Florida law applies to Tiger Supplies' claim for Tortious Interference with Business Expectancy (Count IV).  *See* Motion, at 18-19. In its Motion, AllPac fails to reference any legal authority or, at the very least, provide an explanation as to any type of conflict of law between New Jersey and Florida law with respect to such a claim.  *See* Motion, at 18.

14

In fact, the only difference between each set of laws is that New Jersey law contains one additional pleading requirement.  *Fireman v. Armstrong World Industries, Inc.*, 980 F.2d 171, 186 (3d Cir. 1992).  Specifically, under New Jersey law, a plaintiff must plead regarding the reasonable probability that it would have received an anticipated economic benefit, in the absence of any alleged interference. *Id.*  Nevertheless, the elements for such a claim under both New Jersey and Florida law, as set forth in AllPac's Motion, are substantially similar and there is no basis to assert that a conflict of law exists for such a claim.  *See Knierim v. Siemens Corp.*, 2008 WL 906244 at *16 (D.N.J. March 31, 2008) (holding that New Jersey and Illinois pleading requirements for tortious interference with prospective economic damages were substantially similar, even in spite of New Jersey's anticipated economic benefit element, which was not required under Illinois law and finding no conflict of law as a result).

For these reasons, there is no conflict of law between New Jersey and Florida law with respect to the elements required to state a claim for tortious interference with business expectancy.  Correspondingly, New Jersey law applies and a discussion as to which state had the most significant relationship to the claims asserted is unnecessary.

## POINT IV

**ALLPAC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM MUST BE DENIED AS ALL CAUSES OF ACTION WERE SUFFICIENTLY PLED**

### A.    Tiger Supplies has Sufficiently Pled a Breach of Contract Claim Against AllPac

In Count I of the Complaint, Tiger Supplies alleges that AllPac "knowingly breached its contract with Tiger Supplies by failing to deliver the goods it agreed to supply to Tiger Supplies, and, further, by failing to deliver those same goods on an expedited basis."  Compl. at ¶41.  AllPac, in turn, argues that Tiger Supplies "concludes" that AllPac breached the contract by failing to deliver the ordered goods solely on an "expedited basis," and that Tiger Supplies uses impermissible parol evidence in support of its allegation.  *See* Motion, at 22.  AllPac misstates the claims asserted by Tiger Supplies.  A simple reading of the facts and legal elements asserted in the Complaint makes it clear that Tiger Supplies has more than sufficiently alleged a breach of contract claim and that Tiger Supplies has not cited to any impermissible parol evidence in support of its claim.

Federal Rule of Civil Procedure 8(a)(2) requires an initial pleading to include a "short and plain statement of the claim showing that the pleader is entitled to relief."  For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In determining the sufficiency of a

complaint, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Phillips v. County of Allegheny*, 515 F. 3d 224, 234 (3d Cir. 2008).

To prevail on a breach of contract claim under New Jersey law, a plaintiff must establish the following elements: (1) a valid contract "containing certain terms;" (2) that a plaintiff "did what the contract required [him] to do;" (3) the defendant's breach of the contract; and (4) damages resulting from that breach. *Globe Motor Co. v. Igdalev*, 225 N.J. 469, 482 (2016) (citations omitted). Further, where an invoice plainly states the terms of an agreement between two parties, it can constitute a valid contract. *See Werner Aero Services, LLC v. Professional Technology Repairs*, 2017 WL 3610485 at *2 (D.N.J. April 28, 2017) (finding that invoice which identified the goods ordered, the purchase price, and the payment deadline, constituted a binding contract).

The contract attached to the Complaint is valid and binding, as it contains the date of the agreement with AllPac (January 27, 2020), as well as the services to be performed (delivery of a shipment of N95 masks), the price to be paid for goods ($49,400), and the estimated date of shipment (January 29, 2020 - following receipt of payment ). Further, Tiger Supplies has more than adequately pled its breach of contract claim, where it alleges that it performed under the Contract (by making payment) and that by failing to ever deliver the goods, AllPac breached the Contract.

17

AllPac cites to *Khorchid v. 7-Eleven, Inc.*, 2018 WL 5149643 (D.N.J. Oct. 22, 2018) in support of its argument.  *See* Motion, at 14.  In *Khorchid*, the Court granted the defendant's motion to dismiss the plaintiff's complaint, where the complaint did not identify which one of two franchise agreements, or its relevant provisions, was allegedly breached.  *Khorchid*, 2017 WL5149643 at *10.  In that case, the complaint identified various requirements that the defendant owed to the plaintiff under the franchise agreements but failed to identify which specific requirements under the contract were not performed by the defendant.  *Id.*  The facts in *Khorchid* are not analogous to the present case, as here, Tiger Supplies has identified a simple, one-page contract for goods in its Complaint (as opposed to multiple complex agreements) and has adequately alleged that AllPac breached the contract by failing to ever deliver the goods ordered.[5]

AllPac additionally argues that Tiger Supplies violated the parol evidence rule by referencing in its Complaint, oral representations between the parties regarding an expectation of expedited shipment of goods.  *See* Motion, at 22.  AllPac cites to *U.S. v. Clementon Sewerage Authority*, 365 F. 2d 609, 613 (3d Cir. 1966) in support of its argument.  *Id.*

---

[5] Further, the Contract specifies January 29, 2020 (two days after the execution of the agreement) as the date of expiry for the Contract.

In *Clementon*, the Third Circuit held that fully integrated contracts may not be supplemented by evidence of prior or contemporaneous oral agreements relating to the same subject matter. *Id.* at 613. Notably, AllPac conveniently disregards the lengthy discussion in the *Clementon* opinion regarding the importance of determining whether a contract is integrated in the first place.

Specifically, the Court provides that "[t]he touchstone of the rule's application is the fact of an 'integrated' written contract, and 'integrated' is used as a word of art." *Id.* Further, whether an agreement is integrated relies "wholly upon the intent of the parties," but "the intent must be judged by an external standard." *Id.* The central question is "whether certain subjects of negotiation were intended to be covered," which requires a comparison between the "writing and the negotiations." *Id.* at 613-614.

First, it bears noting that AllPac has not engaged in an analysis as to whether the Contract was fully integrated. More importantly, however, the New Jersey Supreme Court has held that evidence of attendant circumstances relating to the execution of a contract is always admissible in the aid of the interpretation of an integrated agreement, even when the contract is free from ambiguity. *Conway v. 287 Corporate Center Associates*, 187 N.J. 259, 269-270 (2006), citing to *Atlantic Northern Airlines v. Schwimmer*, 12 N.J. 293, 301 (1953). The Court provided that "[t]he polestar of construction is the intention of the parties to the contract as

19

revealed by the language used, taken as an entirety; and, in the quest for the intention, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain are necessarily to be regarded." *Atlantic Northern Airlines*, 12 N.J. 293 at 301-302.   Further, the parol evidence rule can exclude testimony " 'only when it is offered for the purpose of 'varying or contradicting' the terms of an 'integrated' contract; it does not purport to exclude evidence offered or the purpose of interpreting and giving a meaning to those terms." *Id.* at 302.

The examination of extrinsic evidence in the interpretation of contracts can "include consideration of the particular contractual provision, an overview of all the terms, the circumstances leading up to the formation of the contract, custom usage, and the interpretation placed on the disputed provision by the parties' conduct." *Conway*, 187 N.J. at 269-270 (2006).  Further, "[e]xtrinsic evidence may be used to uncover the true meaning of contractual terms.  It is only after the meaning of the contract is discerned that the parol evidence rule comes into play to prohibit the introduction of extrinsic evidence to vary the terms of the contract." *Id.* at 270, citing to *Atlantic Northern Airlines*, 12 N.J. at 307.

Here, the Court can consider the circumstances leading up to the formation of the Contract to understand the intent of the Parties, as it pertains to the terms relating to delivery of the goods.  In particular, prior to the execution of the Contract, Tiger Supplies and AllPac communicated regarding Tiger Supplies' need to receive the

N95 masks "as soon as possible following a purchase," so that the goods could be re-distributed upon receipt. Compl. at ¶13. As alleged in the Complaint, AllPac acknowledged the need to deliver the goods in a timely fashion. *Id.* at ¶14. Notably, the Contract itself provided that "[o]nce payment is received, goods will be prepared and set for delivery" and set a date of expiry of January 29, 2020, a mere two days after the execution of the contract. It therefore stands to reason that the Parties intended to contract for shipment of the N95 masks on an expedited basis.

### B.    Tiger Supplies has Sufficiently Pled a Cause of Action for Fraudulent Inducement/Misrepresentation against AllPac

In Count II of the Complaint, Tiger Supplies alleges that AllPac made material misrepresentations and omissions for the purpose of inducing Tiger Supplies' reliance regarding (1) its inventory of N95 and its ability to deliver the aforesaid inventory; and  (2) regarding its ability to ship and deliver the N95 masks by or before January 31, 2020. Compl. at ¶45. In its Motion, AllPac argues that Tiger Supplies' fraudulent inducement claim is prohibited by the economic loss doctrine and "violates the well-settled principal [sic] that a fraud claim derived only from a breach of contract fails as a matter of law." *See* Motion, at 23-24. Contrary to AllPac's claims, Tiger Supplies has pled a valid cause of action for fraudulent misrepresentation, which is not barred by the economic loss doctrine.

A tort claim, including a claim for fraud, can be asserted alongside a breach of contract claim, where the tortious conduct is "extrinsic to the contract between

the parties." *Chen v. HD Dimension Corp.*, 2010 WL 4721514 at *8 (D.N.J. Nov. 15, 2010), citing *Capitalplus Equity, LLC v. Prismatic Dev. Corp.*, 2008 WL 2783339 at *6 (D.N.J. July 16, 2008).   A claim of fraud in the inducement may proceed despite the economic loss doctrine, where the allegations relate to misrepresentations unrelated to the performance of the contract. *Chen*, 2010 WL 4721514 at *8-9. Under New Jersey law, the economic loss doctrine "defines the boundary between the overlapping theories of tort law and contract law by barring the recovery of purely economic loss in tort." *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F. 2d 238, 244 (3d Cir. 2010), quoting *Dean v. Barrett Homes, Inc.*, 406 N.J. Super. 453, 470 (App Div. 2009).

Allegations regarding representations made during the negotiation of a contract, which support the inference that the party was fraudulently induced to enter the contract are "necessarily extraneous to the contract." *G&F Graphic Servcs., Inc. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 586, 593 (D.N.J. 2014) (finding exception to the economic loss doctrine for a fraud in the inducement claim); *see also Bracco Diagnostics Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 563 (D.N.J. 2002) (noting that New Jersey decisions permitting fraud claims to proceed alongside breach of contract most often involve fraudulent inducement claims based on pre-contractual misrepresentations).

Tiger Supplies fraudulently induced Tiger Supplies to enter the Contract by misrepresenting material facts during its contract negotiation with Tiger Supplies. Specifically, during contract negotiations, AllPac's business consultant, Mr. Muran, knowingly misrepresented that AllPac possessed the inventory of N95 Masks ordered by Tiger Supplies and that AllPac had the ability to deliver the aforesaid inventory. And, three days following the execution of the contract, Mr. Muran informed Tiger Supplies, via text message, that AllPa would be unable to deliver the N95 Masks, as its seller had sold out of the goods which were intended for delivery to Tiger Supplies. Compl. at ¶¶29-30. Had Tiger Supplies known that AllPac did not, in fact, possess the aforesaid inventory of N95 Masks, it would never have contracted with AllPac for delivery of the same.

AllPac also cites to *Alexander v. CIGNA Corp.*, 991 F. Supp. 425, 427 (D.N.J. 1998) for the principle that statements regarding future or contingent events, or expectations or probabilities, do not constitute misrepresentations. *See* Motion, at 23. Notably, the *Alexander* opinion also provides that "in order to constitute a fact, a statement's content must be susceptible of 'exact knowledge' at the time it is made." *Id.* at 435. In this case, however, AllPac did not make any misleading statements regarding future or contingent events, but regarding its then nonexistent inventory of N95 Masks. AllPac made a material misrepresentation to Tiger Supplies regarding its N95 inventory when it knew that it did not possess the goods

it nevertheless contracted to sell to Tiger Supplies. *See Fimbel v. Fimbel Door Corp.*, 2014 WL 6692004 at *5 (D.N.J. Dec. 10, 2014) (finding that defendant materially misrepresented that it would pay dividends to shareholders upon sale of corporation, where he had no intent to do so and subsequently failed to do). Tiger Supplies has accordingly pled sufficient facts in support of its claim for fraudulent inducement/misrepresentation.

### C.  Tiger Supplies has Sufficiently Pled a Cause of Action under the New Jersey Consumer Fraud Act Claim

In Count III of the Complaint, Tiger Supplies alleges a cause of action under the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §56:8-1, *et seq.* ("NJCFA"). Compl. at ¶¶50-52. AllPac contends that Tiger Supplies cannot sustain its claim because, as a distributor of goods, Tiger Supplies is a not a consumer and therefore cannot establish standing under the NJCFA. *See* Motion, at 25.  While it is true that Tiger Supplies functions as a distributor, in this case, Tiger Supplies was positioned as a consumer during its business dealings with AllPac when it was materially misled by AllPac's false advertising, resulting in irreparable injury.  For this reason, Tiger Supplies' claim under the NJCFA is proper.

### D.  Tiger Supplies has Sufficiently Pled a Cause of Action for Tortious Interference with Contract

In Count IV of the Complaint, Tiger Supplies pleads a claim of tortious interference with contract.  Compl. at ¶¶53-58.  In its Motion, AllPac analyzes Tiger

Supplies' claim under Florida law, instead of New Jersey law, and concludes that Tiger Supplies has failed to state a claim. *See* Motion, at 26-27.

AllPac cites to no authority in support of its argument, apart from references to opinions from the Southern District of Florida, regarding the elements of a cause of action for tortious interference with a contractual opinion under Florida law. *See* Motion, at 26. AllPac alleges that Tiger Supplies has failed to properly allege the elements for such a claim under Floria law. As discussed in Section 3(i) of this brief, Tiger Supplies' claim must be analyzed under New Jersey law and not Florida law. Further, without citing to any authority, AllPac alludes that Tiger Supplies has failed to allege its claims with sufficient particularity. *Id.* A review of Tiger Supplies' claim soundly defeats AllPac's argument.

To establish a claim for tortious interference with contract, a plaintiff must allege (1) the existence of a contractual relationship; (2) intentional and malicious interference with that relationship; (3) loss or breach of a contract as a result of that interference; and (4) damages resulting from that interference. *DiGiorgio Corp. v. Mendez & Co.*, 230 F. Supp. 2d 552, 558 (D.N.J. 2002), citing *Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 751-752 (1989).

In the Complaint, Tiger Supplies alleges that it entered into several valid and enforceable contracts with its clients to ship and deliver the very same goods it expected to receive from AllPac. Compl. at ¶54. AllPac was aware of those

contractual relationships, as Tiger Supplies provided information regarding the same, during the course of negotiations for purchase of the N95 Masks. *Id.* at ¶56. AllPac thereafter intentionally and unjustifiably attempted to induce a breach of the contracts between Tiger Supplies and its clients, through its decision to enter into a contract for the sale of goods it never possessed and for which it misrepresented that it was in the possession of. *Id.* As a result of AllPac's intentional interference, Tiger Supplies incurred damages, in an amount more than $500,000, which included the cost of attempting to provide the goods it should have received from AllPac to its customers. *Id.* at ¶57.

Tiger Supplies has sufficiently alleged every element for the claim of tortious interference of contract, with the requisite degree of particularity. *See Grande Village LLC v. CIBC Inc.*, 2015 WL 1004236 at *8 (D.N.J. March 6, 2015); *Syncsort v. Innovative Routines, Intern, Inc.*, 2005 WL 1076043 at *13 (D.N.J. May 6, 2005); and *Fidelity Eatontown, LLC v. Excellency Enterprise, LLC*, 2017 WL 2691417 at *6-7 (D.N.J. June 22, 2017) (motions to dismiss denied where plaintiffs pled similar facts in support of tortious interference with contract claims).

### E. Tiger Supplies has Sufficiently Pled a Cause of Action for Tortious Interference with Business Expectancy

In Count V of the Complaint, Tiger Supplies alleges that AllPac tortiously interfered with its business expectancy. Compl. at ¶¶59-64. In its Motion, AllPac contends that Tiger Supplies has not adequately pled this claim. *See* Motion, at 27-

28. As with the tortious interference with contract claim, AllPac cites to no authority in support of its argument, apart from a single (improperly cited) reference to an opinion from the Southern District of Florida, regarding the elements of a cause of action for tortious interference with business expectancy under Florida law. *See* Motion, at 27.   AllPac alleges that Tiger Supplies has failed to properly allege the elements for such a claim under Florida law. As discussed in Section 3(ii) of this brief, Tiger Supplies' claim must be analyzed under New Jersey law and not Florida law.  As with the tortious interference with contract claim, discussed above, Tiger Supplies has more than sufficiently pled a cause of action for tortious interference with business expectancy.

To assert a claim for tortious interference with business expectancy (or prospective economic relations), a plaintiff must demonstrate that it was in the pursuit of business and that the defendant's interference was done intentionally and with malice.  *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 738, 751 (1989) (internal citations omitted).  Malice is defined to mean that the harm was incited intentionally and without justification or excuse.  *Id.*  A plaintiff must show that, "if there had been no interference, there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits. *Id.*  Lastly, the plaintiff must allege that the injury caused damage.  *Id.* at 752.

In the Complaint, Tiger Supplies alleges that AllPac knew of Tiger Supplies' expectancy to enter into business with business relationships with its clients to provide various supplies, across a variety of industries.  Compl. at ¶59.   Tiger Supplies further alleges that AllPac interfered with its business expectancy by reneging on its promise to deliver the goods ordered by Tiger Supplies and by failing to cure its breach of contract, preventing Tiger Supplies from realizing its business relationships, causing Tiger Supplies to sustain damages in the form of lost business, in excess of $500,000.  *Id.* at ¶62.   Tiger Supplies has sufficiently alleged the elements for the claim of tortious interference with business expectancy.  *See NY Machinery Inc. v. Korean Cleaners Monthly*, 2018 WL 2455926 at *4-5 (D.N.J. May 31, 2018) (motion to dismiss denied where plaintiff pled similar facts in support of tortious interference with business expectancy claim).

### F.   Tiger Supplies has Sufficiently Pled a Cause of Action for Unjust Enrichment

In Count VI of the Complaint, Tiger Supplies alleges a cause of action for unjust enrichment.  Compl. at ¶¶65-67.   In its Motion, AllPac argues that there are no factual allegations to support such a claim and that the claim is duplicative of Tiger Supplies' breach of contract claim and is therefore improper.  *See* Motion, at 28-29.  Contrary to AllPac's argument, Tiger Supplies has sufficiently pled a claim for unjust enrichment.  Further, if for some reason, the Contract is deemed invalid,

Tiger Supplies is still entitled to damages for the payment it made for the N95 Masks, under a theory of unjust enrichment.

Under New Jersey law, a claim under the quasi-contractual theory of unjust enrichment has two essential elements: (1) that the defendant received a benefit from the plaintiff; and (2) that the retention of the benefit by the defendant is inequitable. *Wanaque Borough Sewerage Auth. v. West Milsford*, 144 N.J. 564, 575 (1996).  In this case, AllPac received payment from Tiger Supplies in the amount of $49,400 and it would be inequitable if AllPac did not provide the expected goods in exchange for that payment.

It is well understood that where there is a written contract, then unjust enrichment does not apply.  *See Ramon v. Budget Rent-A-Car Sys.*, 2007 WL 604795 at *5 (D.N.J. Feb. 20, 2007)(holding that the Court could not simultaneously find that the plaintiff had asserted a viable breach of contract claim and claim for unjust enrichment).  At the same time, a plaintiff may plead a claim for unjust enrichment in the alternative to a breach of contract claim in the event that a contract is found not to exist.  *Pauly v. Houlihan's Restaurants, Inc.*, 2012 WL 6652754 at *7 (D.N.J. Dec. 12, 2012).   For this reason, Tiger Supplies' unjust enrichment claim is valid and sufficiently pled.

### G.     Tiger Supplies has Sufficiently Pled a Conversion Claim

In Count VII of the Complaint, Tiger Supplies alleges a cause of action for conversion.  Compl. at ¶¶68-72.   In its Motion, AllPac argues that there are no factual allegations to support the claim; that Tiger Supplies has not shown proof of payment for the goods ordered; and that Tiger Supplies has made no allegations that it demanded a refund that AllPac refused to refund Tiger Supplies' monies.  *See* Motion, at 29-30.   Not only has Tiger Supplies sufficiently pled a claim for conversion, but AllPac has misstated the requirements for a conversion claim under New Jersey law and further, has blatantly misconstrued Tiger Supplies' well-pled allegations.

Federal Rule of Civil Procedure 8(a)(2) requires that a plaintiff make a short and plain statement of the claim, showing that it is entitled to relief.  While a formulaic recitation of the elements of a cause of action will not do, a plaintiff need not plead detailed allegations either.  *Davis v. Froelich*, 2020 WL 529143 at *1 (D.N.J. Jan. 30, 2020), citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In New Jersey, conversion is defined as an "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Ricketti v. Barry*, 2015 WL 1013547 at *8 (D.N.J. Mar. 9, 2015).  The elements of common law conversion under New Jersey law are (1) the existence of property; (2)

the right to immediate possession thereof belonging to [the] plaintiff; and (3) the wrongful interference with that right by [the] defendant. *Adami v. Cardo Windows, Inc.*, 2014 WL 2586933 at *15 (D.N.J. June 10, 2014).

In the Complaint, Tiger Supplies alleged that it paid AllPac monies for the shipment and delivery, on an expedited basis of a bulk order of N95 Masks, which it never received from AllPac.  Comp. at ¶68.  Thereafter, Tiger Supplies demanded possession of its monies.  *Id*. at ¶71.   AllPac refused to refund Tiger Supplies its payment and continues to retain possession of Tiger Supplies' payment. *Id.*  at ¶71. Tiger Supplies is not required, under federal pleading rules, to allege its claim with any further specificity, and its claim is sufficiently pled.  Further, contrary to the misrepresentations contained in AllPac's Motion, Tiger Supplies' Complaint clearly and unambiguously alleges facts relating to its demand on AllPac for a refund of its payment, following AllPac's failure to deliver the ordered goods.

## CONCLUSION

As set forth above, Tiger Supplies has plainly established specific jurisdiction over AllPac in connection with this dispute and the Complaint of Tiger Supplies properly pled all causes of action asserted against AllPac.  For these reasons, Tiger Supplies respectfully requests that this Court deny AllPac's Motion to Dismiss.

In the alternative, if the Court is inclined to consider granting AllPac's Motion with respect to personal jurisdiction, Tiger Supplies requests leave to take

jurisdictional discovery, regarding both general and specific jurisdiction, prior to any final ruling regarding lack of personal jurisdiction in New Jersey. Based upon the foregoing, it is respectfully submitted that AllPac's Motion to Dismiss be denied in its entirety.

                                        Respectfully submitted,

Dated: June 1, 2020                     /s/ *Arthur M. Owens*
                                        Arthur M. Owens
                                        Dennis J. Drasco
                                        LUM, DRASCO & POSITAN LLC
                                        103 Eisenhower Parkway, Suite 401
                                        Roseland, NJ 07068
                                        Tel: 973-403-9000
                                        Fax: 973-403-9021
                                        aowens@lumlaw.com
                                        ddrasco@lumlaw.com

                                        *Counsel for Plaintiff, Tiger Supplies Inc.*

                                        /s/ *Christopher W. Niro*
                                        Christopher W. Niro,
                                        Maryam H. Arfeen
                                        ARONBERG GOLDGEHN DAVIS &
                                        GARMISA
                                        330 North Wabash Ave, Suite 1700
                                        Chicago, IL 60611
                                        Tel: 312-755-3153
                                        Fax: 312-828-9635
                                        cniro@agdglaw.com
                                        marfeen@agdglaw.com

                                        *Counsel for Plaintiff, Tiger Supplies Inc.*
                                        *Pro Hac Vice Admission Pending*