*Steven J. Harfenist, Esq.*
HARFENIST KRAUT & PERSLTEIN, LLP
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
P. (516)355-9600
F. (516)355-9601
SHarfenist@hkplaw.com
*Counsel for Defendant*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

----------------------------------------------------------------------X
TIGER SUPPLIES, INC.

                                                                                    **Docket No.:**
                                                                                    **20-CV-1864 (CCC)(ESK)**
                               Plaintiff,

   - against -

 ALLPAC WORLDWIDE, INC.

                             Defendant.
----------------------------------------------------------------------X

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF MOTION TO DISMISS**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ i

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ...................................................................................................................... 2

POINT I.   THERE ARE INSUFFICIENT MINIMUM CONTACTS BETWEEN NEW JERSEY AND ALLPAC FOR THE COURT TO MAINTAIN JURISDICTION ............................................................................................. 2

    A.   The Parties' Contract is Insufficient to Create Specific Jurisdiction ....................... 3

    B.   AllPac and Tiger Supplies' Informational Communications are Insufficient Purposeful Activities ............................................................................................ 4

POINT II.   TIGER SUPPLIES' CAUSES OF ACTION ARE DEFICIENT AS A MATTER OF LAW .............................................................................................. 8

    A.   Fraudulent Inducement/Misrepresentation .............................................................. 8

    B.   Violations of New Jersey's Consumer Protection Laws ....................................... 11

    C.   Tortious Interference with Existing and Prospective Contracts ............................ 11

    D.   Conversion ............................................................................................................ 13

CONCLUSION ................................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Cases**

*Barco Auto Leasing Corp. v. Holt*
   228 N.J.Super. 77, 83, 548 A.2d 1161 (App.Div.1988)..............................................13
*Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*
   226 F.Supp.2d 557, 562 (D.N.J.2002) ........................................................................9
*Burger King Corp. v. Rudzewicz*
   471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) ............................2
*Cargill Global Trading v. Applied Dev. Co.*
   706 F. Supp. 2d 563, 575-76 (D.N.J. 2010) ..............................................................12
*Chen v. HD Dimension, Corp.*
   2010 WL 4721514, *9 (D.N.J. 2010)..........................................................................9
*Ebin New York, Inc. v. Hungsuk Ham*
   2020 WL 2790427 (Law Div. 2020)...........................................................................5
*Electro-Catheter Corp. v. Surgical Specialties Instrument Company, Inc.*
   587 F.Supp. 1446 (D.N.J. 1984) .............................................................................6, 7
*Emerson Radio Corp. v. Orion Sales, Inc.*
   No. CIV. A. 95–6455, 2000 WL 49361 (D.N.J. Jan.10, 2000)...................................9
*Florian Greenhouse, Inc. v. Cardinal IG Corp.*
   11 F.Supp.2d 521, 528 (D.N.J.1998) ..........................................................................9
*Gleason v. Norwest Mortgage*, Inc.
   243 F.3d 130, 144-45 (3d Cir.2001)..........................................................................10
*Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*
   988 F.2d 476, 482 (3d Cir.1993)............................................................................2, 3
*Helicopteros Nacionales de Columbia, S.A. v. Hall*
   466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404, 411 n. 9 (1984) ................2
*IMO Industries, Inc. v. Kiekert AG*
   155 F.3d 254 (3rd Cir. 1998)......................................................................................4
*Jardim v. Overley*
   461 N.J.Super. 367, 221 A.3d 593 (App. Div. 2019).......................................5, 7, 8
*LaPlace v. Briere*
   404 N.J.Super. 585, 595, 962 A.2d 1139 (App. Div.)
   *certif. denied*, 199 N.J. 133, 970 A.2d 1049 (2009)................................................13
*Lebel v. Everglades Marina, Inc.*
   115 N.J. 317, 558 A.2d 1252 (1989)......................................................................6, 7
*Mandel v. UBS/PaineWebber, Inc.*
   373 N.J. Super. 55, 79-80 (App. Div. 2004) .............................................................12
*Mellon Bank (East) PSFS, National Association v. Farino*
   960 F.2d 1217, 1223 (3d Cir.1992)........................................................................3, 5
*Mesalic v. Fiberfloat Corp.*
   897 F.2d 696, 700 (3d Cir. 1990)................................................................................5

*North Penn Gas v. Corning Natural Gas*
   897 F.2d 687, 690–91 (3d Cir. 1990) ................................................................................ 5

*Nostrame v. Santiago*
   213 N.J. 109, 122, 61 A.3d 893, 901 (2013) ............................................................. 11, 12

*Ragonese v. Rosenfeld*
   318 N.J. Super. 63, 722 A.2d 991 (Law Div. 1998) ....................................................... 6

*Remick v. Manfredy*
   238 F.3d 248, 256 (3d Cir. 2001) .................................................................................... 3

*Roper v. Davis Saperstein & Salomon*
   2006 WL 1585222, *5 (Law Div. 2006) ....................................................................... 13

*Singer v. Beach Trading Co.*
   379 N.J. Super. 63, 82 (App. Div. 2005) ...................................................................... 12

*Sunbelt Corp. v. Noble, Denton & Assoc., Inc.*
   5 F.3d 28, 32 (3d Cir. 1993) ............................................................................................ 5

*Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.*
   75 F.3d 147, 152 (3d Cir. 1996) ...................................................................................... 5

*Winslow v. Corporate Express, Inc.*
   364 N.J.Super. 128, 143, 834 A.2d 1037, 1046 (App. Div. 2003) ............................... 13

**Statutes**

New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 ............................................... 11

## PRELIMINARY STATEMENT

AllPac Worldwide, Inc. ("AllPac") submits this reply memorandum of law in further support of its' motion to dismiss the twelve-page complaint interposed by Tiger Supplies Inc. ("Tiger Supplies") that is premised on breach of contract and related business tort claims, due to lack of personal jurisdiction and the legal inadequacy of the causes of action themselves.

Tiger Supplies fails to meet its' Constitutionally required burden of proving the facts necessary to establish AllPac's minimum contacts with the State of New Jersey.

Ignoring well-established legal principles to the contrary, Tiger Supplies instead relies on legal precedents that not only contain significant factual distinctions but are more than thirty years old and out-of-place with current retail transactions that are increasingly conducted or at least initiated over the Internet.  At bottom, the single incomplete transaction, completely initiated by the Plaintiff and conducted without any personal involvement in New Jersey by the Defendant, is insufficient to create specific personal jurisdiction over AllPac in New Jersey.

Even if the Court was to find that New Jersey could exercise personal jurisdiction over AllPac, Tiger Supplies' causes of action for breach of contract and various business-related torts are legally insufficient as a matter of law and must be dismissed pursuant to FRCP 12(b)(6).

Thus, the complaint and this action must be dismissed in their entirety.

# ARGUMENT

## POINT I

### THERE ARE INSUFFICIENT MINIMUM CONTACTS BETWEEN NEW JERSEY AND ALLPAC FOR THE COURT TO MAINTAIN JURISDICTION

Tiger Supplies does not allege and further concedes that it has no evidence, either by way of affidavit or otherwise, that AllPac is subject to New Jersey's general jurisdiction,[1] which occurs "[w]hen a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum…." *Helicopteros Nacionales de Columbia, S.A. v. Hall*. 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404, 411 n. 9 (1984).

Instead, Tiger Supplies claims that the nature of the transaction between the parties created specific jurisdiction. But the allegations plead in the Complaint does not support a finding of specific jurisdiction which would require Tiger Supplies to establish that AllPac (1) has made the necessary "minimum contacts" with New Jersey, and (2) those contacts are deemed reasonable enough, such that the court's assertion of jurisdiction "would comport with 'fair play and substantial justice.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985).

And, as Tiger Supplies bears the burden of proof on the issue, their failure to allege facts sufficient to create jurisdiction dooms the complaint. *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 482 (3d Cir.1993) ("Once a proper jurisdictional objection is raised, the plaintiff bears the burden of proving the facts necessary to establish the minimum contacts the Constitution requires.").

---

[1] *See* Brief of Plaintiff, Tiger Supplies, Inc. in Opposition to Defendant, AllPac Worldwide, Inc.'s Motion to Dismiss the Complaint dated June 1, 2020 (Tiger Supplies' Br.") at p. 5 n. 1.

2

In sum, Tiger Supplies does not meet its' jurisdictional burdens since there is no factual showing that in this one-time-sale scenario AllPac purposely availed itself of New Jersey's retail market to a degree that rises to the level of "minimum contacts" needed to support personal jurisdiction under the Due Process Clause.

### A.     The Parties' Contract is Insufficient to Create Specific Jurisdiction

Tiger Supplies execution of a purchase order with AllPac to deliver goods to New Jersey is insufficient itself to create specific jurisdiction.

"A contract may provide a basis for the exercise of personal jurisdiction that meets due process standards, but a contract alone does not 'automatically establish sufficient minimum contacts in the other party's home forum.' " *Grand Entertainment Group, Ltd.*, 988 F.2d at 482 (quoting *Burger King,* 471 U.S. at 478, 105 S.Ct. 2174).

The one-page purchase invoice signed by the parties on January 27, 2020 does not confer specific jurisdiction over AllPac. *See Mellon Bank (East) PSFS, National Association v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992) (The "fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident.").

In deciding whether to exercise personal jurisdiction in a breach of contract dispute, a district court must consider "the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001).

An examination of the other sparse and limited contact between AllPac and Tiger Supplies do not support a finding in favor of exercising personal jurisdiction.

> **B.     AllPac and Tiger Supplies' Informational Communications are Insufficient Purposeful Activities**

As alleged in the Complaint, the totality of the parties' interactions consisted of: 1) on January 27, 2020, Tiger Supplies saw an advertisement for respiratory masks posted on a passive website by a business consultant employed by AllPac; 2) Tiger Supplies contacted the business consultant identified on the website; 3) telephone and e-mail negotiations the same day between AllPac's business consultant and Tiger Supplies' buyer that resulted in the one-page signed purchase order; and 4) several text messages between the companies between January 28, 2020 and January 30, 2020 concerning the whereabouts of the respirator masks.

The electronic communications between the parties is not enough to create specific jurisdiction in New Jersey. This is best seen by what is not alleged by Tiger Supplies as activities that have been sufficient to create minimum contacts.

Specifically, the Complaint has **no** allegations: 1) AllPac solicited any customers in New Jersey, including Tiger Supplies; 2) an employee or representative of AllPac has ever set foot inside of New Jersey; 3) any of the contracted for merchandise was ever shipped to New Jersey; 4) AllPac and Tiger Supplies have ever conducted a business transaction before; 5) AllPac has ever serviced customers in New Jersey prior to or after this aborted transaction; and 6) the parties' contract did not have a forum selection clause.

Initially, the Complaint fails to allege that AllPac "purposefully directed" its sales activity toward New Jersey. Rather, Tiger Supplies acknowledges that it sought out the purchase via the internet. The Third Circuit has held that without evidence that a merchant directed its sales to New Jersey customers, minimum contacts do not exist to maintain jurisdiction over the eventual sale of goods to a New Jersey customer. *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254 (3rd Cir. 1998)(collecting cases from various circuits).

Nor can jurisdiction be created by communications following up on a transaction initiated over the Internet by New Jersey resident. "[I]nformational communications in furtherance of a contract between a resident and a nonresident does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over the nonresident defendant". *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.*, 75 F.3d 147, 152 (3d Cir. 1996) (internal quotations and brackets omitted.); *See also, Sunbelt Corp. v. Noble, Denton & Assoc., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993) (stating that "an exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity invoking the benefits and protection of the forum state's laws").

In the sales contract context, unlike here, personal jurisdiction has been found, where the seller initiated the transaction in the forum state, *Mellon Bank*, 960 F.2d at 1223; where the defendant sent any payments to the plaintiff in the forum state, *North Penn Gas v. Corning Natural Gas*, 897 F.2d 687, 690–91 (3d Cir. 1990); or where the defendant engaged in extensive post-sale contacts with the plaintiff in the forum state, *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 700 (3d Cir. 1990) (after selling a boat to New Jersey buyer, defendant sent written correspondence to the buyer's New Jersey residence, delivered the boat to New Jersey, and attempted to repair the boat in New Jersey). Tiger Supplies alleges none of the circumstances found sufficient to sustain specific jurisdiction.

Like their federal counterparts, New Jersey State courts have proceeded with caution in subjecting out-of-state sellers to jurisdiction in New Jersey for "one-and-done" transactions. *See Ebin New York, Inc. v. Hungsuk Ham,* 2020 WL 2790427 (Law Div. 2020) (affirming the dismissal of a complaint initiated by a New Jersey seller of beauty supply products, who solicited and sold merchandise to a Florida distributor of such products) (the reverse of the case at bar); *Jardim v.*

*Overley*, 461 N.J.Super. 367, 221 A.3d 593 (App. Div. 2019) (refusing to impose personal jurisdiction on the seller of a California vintage car, who purportedly misrepresented the vehicle's condition); *Ragonese v. Rosenfeld*, 318 N.J. Super. 63, 722 A.2d 991 (Law Div. 1998) (purchaser of a web based ticket that was not delivered to the airport, could not sue the airline in New Jersey, because the airline's internet web page and its 800 telephone number advertisement, did not constitute sufficient contact with state to exercise personal jurisdiction).

As Tiger Supplies has only alleged that it initiated a one-time transaction over the Internet that resulted in a contract electronically negotiated in one-day, there are insufficient "minimum contacts" to exert jurisdiction over AllPac.

Tiger Supplies' reliance on *Lebel v. Everglades Marina, Inc.,* 115 N.J. 317, 558 A.2d 1252 (1989) and *Electro-Catheter Corp. v. Surgical Specialties Instrument Company, Inc.*, 587 F.Supp. 1446 (D.N.J. 1984) is misplaced. Neither *Lebel* nor *Elector-Catheter Corp.* require a contrary finding of specific jurisdiction.

First, both cases are factually dissimilar to the allegations made by Tiger Supplies. This is because the defendants in both cases engaged in far more extensive commercial activity in New Jersey than Tiger Supplies alleges AllPac participated in.

In *Lebel*, which involved the sale of a luxury boat, plaintiff met a representative of defendant at a 1984 boat show in New York. *Lebel,* 115 N.J.Super. at 320. The in-person meeting was then followed by two years of at least twenty phone calls and solicitations that were received by plaintiff, in New Jersey, during which the parties' discussed the boat's price, standard features and the installation of extras. *Id.* By contrast, there were no solicitations by AllPac and the parties' negotiations were restricted to one day.

6

*Electro-Catheter Corp.* involved even more significant in-state contacts between plaintiff, a New Jersey manufacturer of catheters and other medical devices, and defendant, a Maryland corporation that purchased and distributed the medical devices. Specifically: 1) defendant purchased medical equipment over a period of fourteen years; 2) the goods were manufactured in New Jersey for delivery in Maryland; 3) over the course of the last few years, each of defendant's purchased exceeded more than half a million dollars' worth of equipment; 4) defendant's President visited plaintiff's New Jersey's offices at least twenty-five times to discuss business; and 5) defendant's other employees visited plaintiff's New Jersey offices for a total of at least twelve working days over a six-year period. *Electro-Catheter Corp.*, 587 F.Supp. at 1451.

Second, *Lebel* and *Electro-Catheter Corp.* are anachronistic. They were decided before the Internet became or is on the verge of becoming the prevalent means by which retail commerce is conducted in this country, if not worldwide. This reality prompted the New Jersey Appellate Division in *Jardim* to conclude that personal jurisdiction did not exist where there is but a single transaction conducted via the Internet:

> We are cognizant that [defendant] must have been aware he was dealing with a New Jersey buyer. But mere awareness of the other party's domicile is not the equivalent of purposeful availment. [Defendant] did not target New Jersey customers. He presumably would have been willing to sell the Invicta [the car in question] to a collector in any state for an acceptable price.
>
> Perhaps there may come a day in which Internet transactions become so dominant that buyers and sellers should be expected to anticipate, in the absence of an express forum selection clause, that they could be sued in the other contracting party's home state without limitation. Or perhaps technological innovations will make the "courtroom of the future" a forum in which certain kinds of civil litigation can be adjudicated remotely without the necessity of the parties and witnesses appearing in person, thereby minimizing the practical burdens of being sued in another forum state. That day has not arrived and it is unclear what the future will actually bring.

> For the present, we are satisfied that the motion judge in this case fairly and correctly determined that the California seller's activities in this one-time transaction did not comprise "purposeful availment" sufficient to confer personal jurisdiction over him in our state court.

*Jardim,* 461 N.J.Super. at 383-84.

As Tiger Supplies has not alleged that AllPac engaged in systematic contact with New Jersey for the purposes of obtaining customers, initiated or solicited sales in New Jersey or engaged in multiple direct personal actions in New Jersey related to the sale at issue, the Complaint fails to show that Tiger Supplies has constitutionally sufficient minimum contacts with New Jersey.

Under the reasoning of *Jardim,* Tiger Supplies' complaint must be dismissed in its' entirety.

## POINT II

## TIGER SUPPLIES' CAUSES OF ACTION ARE DEFICIENT AS A MATTER OF LAW

Even in the presence of specific jurisdiction, Tiger Supplies' seven causes of action for 1) breach of contract, 2) fraudulent inducement / misrepresentation, 3) violations of New Jersey consumer protection statutes, 4) tortious interference with existing contractual relations, 5) tortious interference with prospective contractual relations, 6) unjust enrichment, and 7) conversion all fail to adequately plead causes of action cognizable under New Jersey law.

In addition to the deficiencies noted in AllPac's moving papers, Tiger Supplies' opposition papers highlight the following infirmities as they relate to several of the claims:

A.  **Fraudulent Inducement / Misrepresentation**

Although pled as a claim for fraud in the inducement of a contract, Count Two is more properly characterized as a claim for fraud in the performance of a contract which is barred under

8

New Jersey's economic loss doctrine.

Under New Jersey law, the economic loss doctrine "'prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract.'" *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.,* 226 F.Supp.2d 557, 562 (D.N.J.2002) (citing *Duquesne Light Co. v. Westinghouse Elec. Co.,* 66 F.3d 604, 618 [3d Cir.1995]).

However, fraud claims that are extrinsic to the underlying contract claims, such as fraud in the inducement, are not barred by the economic loss doctrine. *See Bracco,* 226 F.Supp.2d at 564 (explaining that "to falsely state that one intends to honor a promise is a misstatement of present fact and breaches a separate and extraneous duty not to commit fraud").

An alleged misrepresentation is extraneous to an agreement when it breaches a duty "separate and distinct from the performance" of the agreement's terms. *Chen v. HD Dimension, Corp.,* 2010 WL 4721514, *9 (D.N.J. 2010). In other words, "an act that is in breach of a specific contractual undertaking would not be extrinsic, but an act that breaches some other duty would be." *Emerson Radio Corp. v. Orion Sales, Inc.,* No. CIV. A. 95–6455, 2000 WL 49361 (D.N.J. Jan.10, 2000). Hence, an alleged misrepresentation that "involve[s] a nonfulfillment of a warranty or guarantee contained within the contract itself" cannot be said to be extraneous to the contract. *Florian Greenhouse, Inc. v. Cardinal IG Corp.,* 11 F.Supp.2d 521, 528 (D.N.J.1998).

The misrepresentations alleged by Tiger Supplies are not extraneous to the parties' contract. To the contrary, the misrepresentations relate to AllPac's performance of the terms alleged to constitute the purchase order. Both alleged misrepresentations relate to AllPac's obligation to deliver the respirator masks, which was the *raison d'etre* for the purchase order.

9

Whether AllPac had the masks in their physical possession or had to get them from an outside source, it was their obligation to deliver the merchandise to Tiger Supplies.

Similarly, Mr. Muran's alleged post-contract signing statements about a delivery date for the masks were already memorialized in the contract itself making it an impossibility for them to be an extraneous promise. Specifically, the purchase order identifies January 29, 2020 as the "Date of Expiry" and under "Shipment Information" the "Est. Ship Date" is also stated as January 29, 2020.

Moreover, any statements made by AllPac after the purchase order was signed cannot constitute a misrepresentation leading to a fraudulent inducement, since the contract was already entered. Put simply, the statements had no effect on Tiger Supplies agreeing to the transaction.

Finally, the text messages from AllPac, which are relied upon by Tiger Supplies and annexed as exhibits to the Complaint, show no intent to misrepresent, since AllPac's representative says that AllPac's vendor caused their inability to complete the contract: "We are at a crossroads right now and based on being seriously messed up by our seller and his company they sold out all truck loads we had secured out from under us and are returning to us our monies." (Compl. at Ex. F and Ex. G). Without intent, Tiger Supplies cannot prove a fraudulent misrepresentation. *See Gleason v. Norwest Mortgage*, *Inc.,* 243 F.3d 130, 144-45 (3d Cir.2001) (a claim for fraud in the inducement under New Jersey law requires "a material misrepresentation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment.").

Since there are no breaches of a duty separate and distinct from the performance of the purchase order's terms, the second cause of action must be dismissed.

**B.     Violations of New Jersey's Consumer Protection Laws**

Tiger Supplies impliedly conceded the non-viability of Count Three, when it only devoted approximately one-third of a page to justifying its' assertion that AllPac's conduct violated the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, et seq. ("NJCFA").

Instead of forthrightly addressing AllPac's argument that the transaction does not fall within the contours of the NJCFA because it is one between a distributor and wholesaler, Tiger Supplies merely states it "was positioned as a consumer during its business dealings with AllPac…."[2] No other justification for the claim is offered and they supply no authority for this proposition which is contrary to the recognized application of the NJCFA.

Thus, Count Three should be dismissed as legally insufficient.

**C.     Tortious Interference with Existing and Prospective Contracts**

Even assuming *arguendo* that New Jersey law, as opposed to Florida law, applies to Tiger Supplies' Fourth and Fifth Counts for tortious interference with existing contractual relations and tortious interference with prospective contractual relations, respectively, the causes of action must be dismissed because of an inability to plead AllPac's intentional use of wrongful means.

In fact, Tiger Supplies, by pleading the Fourth and Fifth Counts, is inappropriately attempting to recover breach of contract consequential damages under the guise of common law business torts.

In *Nostrame v. Santiago*, 213 N.J. 109, 122, 61 A.3d 893, 901 (2013), the New Jersey Supreme Court reviewed the *Restatement* sections dealing with, *inter alia*, tortious interference with an existing contract and tortious interference with a prospective contractual relationship and

---

[2] Tiger Supplies Br. at p. 24.

recognized the limited nature of the tort by requiring intentional malicious action. *Id.* at 123, 61 A.3d at 902.

"Interference is *intentional* when "the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action." *Cargill Global Trading v. Applied Dev. Co.*, 706 F. Supp. 2d 563, 575-76 (D.N.J. 2010) (quoting *Dello Russo v. Nagel*, 358 N.J. Super 254, 268 (App. Div. 2003))

A party acts with malice when there is no "justification or excuse" for the interference. *Id.* at 576; *See, Singer v. Beach Trading Co.*, 379 N.J. Super. 63, 82 (App. Div. 2005); *Mandel v. UBS/PaineWebber, Inc.*, 373 N.J. Super. 55, 79-80 (App. Div. 2004).

The *Nostrame* Court provided examples of behaviors constituting wrongful means and actions that fall short of the legal standard for imposing liability:

> There can be no doubt that inducing another to end a contractual relationship through acts that amount to fraud or defamation would be wrongful. But even in the context of ordinary business competitors, our understanding of wrongfulness has been broadened beyond these traditional categories. Our Appellate Division, for example, has recognized that deceit and misrepresentation can constitute wrongful means. Similarly, our courts have concluded that "violence, fraud, intimidation, misrepresentation, criminal or civil threats, and/or violations of the law" are among the kinds of conduct that would be considered to be "wrongful means." On the other hand, lesser sorts of behavior have been found to fall short of constituting wrongful means in the ordinary business context. (internal quotations and citations omitted)

*Nostrame* at 124, 61 A.3d at 902.

Applying these principles, it is impossible to conclude that a mere breach of contract – the only wrongful intentional behavior alleged by Tiger Supplies – subjects AllPac to liability in tort. If that is the case, then every wholesaler who fails to deliver merchandise to a distributor, regardless of the cause for the non-delivery, will be subjected to tort liability.

Under Tiger Supplies theory, even if the wholesaler does not know any of the distributors' customers and never contacts any of the distributors' customers, as is the case at bar. According to Tiger Supplies, it is enough that the wholesaler merely knows that the non-delivered goods may be sold to a third-party in the future. As a result, all traditional categories of wrongfulness observed by New Jersey law would be significantly broadened and not for the better.

Thus, Counts Four and Five fail to state a claim on which relief may be granted.

**D.**     **Conversion**

Tiger Supplies' claim for conversion, as embodied in the Seventh Count, is subject to dismissal because it duplicates the cause of action for breach of contract.

Conversion has been defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Barco Auto Leasing Corp. v. Holt,* 228 *N.J.Super.* 77, 83, 548 *A.*2d 1161 (App.Div.1988); *LaPlace v. Briere*, 404 N.J.Super. 585, 595, 962 A.2d 1139 (App. Div.), *certif. denied*, 199 N.J. 133, 970 A.2d 1049 (2009).

Here, there can be no conversion. It is well-established that "the alleged failure of a party to honor its obligations under a contract is solely a breach of contract, and not a conversion of property of the other party to the contract." *Roper v. Davis Saperstein & Salomon*, 2006 WL 1585222, *5 (Law Div. 2006); *see Winslow v. Corporate Express, Inc.,* 364 N.J.Super. 128, 143, 834 A.2d 1037, 1046 (App. Div. 2003) ("The failure of a party to a contract to pay the full contract price is simply a breach of the contract and thus does not constitute a conversion of the property of the other party to the contract.")

Thus, the Seventh Count must be dismissed.

## CONCLUSION

As a result of the foregoing, AllPac respectfully demands an order dismissing Tiger Supplies' Complaint and the grant of such other and further relief as may be deemed just, proper and equitable.

AL/D344635/FL3137